FILED

MAR 1 - 2006

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CR. NO. 1:06CR66-MEF |
| | : | |
| | : | VIOLATIONS: |
| | : | |
| | : | 18 U.S.C. §§ 1343 and 1346 |
| vs. | : | Honest Services Wire Fraud |
| | : | |
| | : | 18 U.S.C. § 201 |
| | : | Bribery |
| JEFFREY HOWARD STAYTON and | : | |
| | : | 18 U.S.C. § 1503 |
| WILLIAM CURTIS CHILDREE, | : | Obstruction of Justice |
| | : | |
| Defendants. | : | |

## INDICTMENT

THE GRAND JURY CHARGES:

### COUNTS ONE AND TWO
[18 U.S.C. §§ 1343, 1346 and 2 - Honest Services Wire Fraud]

Introduction

At all times material to this Indictment:

1. The United States Department of Defense ("DOD") was a department and agency within the executive branch of the United States government. Through its United States Army Test and Evaluation Command ("ATEC"), DOD procured, modified, and evaluated aircraft for use by Army personnel in military operations.

2. Defendant JEFFREY HOWARD STAYTON ("STAYTON") was employed as a

DOD official, serving as Chief of ATEC's Aviation Division.

3. STAYTON had a duty, as set forth in federal ethics regulations, to refrain from directly or indirectly soliciting or accepting a gift or gratuity from a party doing business with the Army.

4. STAYTON was also required to file each year detailed financial disclosure statements on which he was to identify, among other things, the source and amount of income received from sources other than the federal government and certain liabilities.

5. Defendant WILLIAM CURTIS CHILDREE ("CHILDREE") was the sole owner and operator of Maverick Aviation, Inc., Maverick Aviation International, Inc., Maverick Aviation Corporation, and MAC International, LLC, (collectively, "Maverick"), which were all located in Enterprise, Alabama. Maverick was a business that engaged in the purchase and distribution of helicopters for its clients.

6. In or around November 2001, Maverick served as the government contractor on contract DATM05-02-C-0005 ("the Contract") with responsibility for, among other things, procuring and modifying two Russian helicopters. STAYTON served as the Technical Representative for the Contract, which meant that he was responsible for evaluating the bids on the Contract and for monitoring the performance of the Contract. STAYTON was also responsible for certifying satisfactory performance under the Contract before Maverick could be paid for its work. In exchange for Maverick's complete and satisfactory performance under the Contract, the United States government agreed to pay Maverick approximately $4.7 million.

### The Scheme

7. From in or about October 2001, and continuing through in or about June 2005, in the Middle District of Alabama and elsewhere, defendants STAYTON and CHILDREE, aided and abetted by each other, knowingly and willfully devised and intended to devise a scheme and artifice to defraud and deprive the United States government and the Army of their right to the honest and faithful services of STAYTON, as the Chief of the Aviation Division of ATEC, performed free from deceit, favoritism, bias, self-enrichment, self-dealing, and concealment.

### Purpose of the Scheme

8. It was the purpose of the scheme for STAYTON to use his official position to influence the award and payment of the Contract and to obtain a personal financial benefit from CHILDREE, namely, a payment of more than $61,000 to a third party on STAYTON's behalf, and for STAYTON and CHILDREE to conceal their activities from Army employees, federal criminal investigators, and others.

### Manner and Means of the Scheme

9. It was part of the scheme and artifice to defraud that:

   a. STAYTON, in his role as Technical Representative for the Contract, took actions that favored Maverick's selection as the Contract recipient, including removing from consideration the name of one prospective bidder and substituting Maverick in its place.

   b. STAYTON misled government officials about the progress of Maverick's performance under the Contract, including falsely certifying in December 2001 that the Contract

had been fully completed when it had not, thereby triggering premature payment to Maverick under the Contract.

    c.    CHILDREE secretly paid STAYTON $61,071.75 from a Maverick bank account to satisfy the entire amount on a mortgage on STAYTON's personal residence in Spotsylvania, Virginia. CHILDREE made this payment approximately two weeks after Maverick received a payment authorized by STAYTON of approximately $1.1 million under the Contract.

    d.    STAYTON and CHILDREE took steps to conceal the true nature and purpose of the payment, including:

    (i)    CHILDREE's lie to a bank officer who facilitated the $61,071.75 payment about the nature of the payment.

    (ii)    STAYTON's failure to disclose his solicitation or receipt of the payment to other ATEC or Army personnel involved with the administration or execution of the contract.

    (iii)    STAYTON's failure to disclose the payment on his financial disclosure statements.

Execution of the Scheme

10.    On or about the date of each count listed below, in the Middle District of Alabama and elsewhere, defendants JEFFREY HOWARD STAYTON and WILLIAM CURTIS CHILDREE, aided and abetted by each other, for the purpose of executing the above-described scheme and artifice to defraud and deprive, did knowingly transmit and cause to be transmitted

by means of wire communication in interstate commerce, the following writings, signals, and sounds:

| Count | Date | Wire Transmission |
|---|---|---|
| ONE | January 4, 2002 | Electronic mail message from STAYTON in Virginia to CHILDREE in the Middle District of Alabama providing mortgage payoff and other information for a mortgage on STAYTON's home |
| TWO | January 4, 2002 | CHILDREE transfer of $61,071.75 for the benefit of STAYTON via wire from a bank in the Middle District of Alabama to a mortgage company in California |

All in violation of Title 18, United States Code, Sections 1343, 1346 and 2.

## COUNT THREE
[18 U.S.C. § 201 - Bribery]

1. The allegations contained in Paragraphs 1 through 6 of Counts One and Two of this Indictment are realleged as though fully set forth herein.

2. From in or about October 2001, and continuing through in or about January 2002, in the Middle District of Alabama and elsewhere, defendant

JEFFREY HOWARD STAYTON,

being a public official, did directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept a thing of value personally, in return for being influenced in the performance of official acts, that is, STAYTON solicited and received a payment for STAYTON's benefit in the amount of $61,071.75 from defendant WILLIAM CURTIS CHILDREE, and in return STAYTON provided favorable treatment to CHILDREE and his company in the award and supervision of government contract DATM05-02-C-0005.

All in violation of Title 18, United States Code, Sections 201(b)(2)(A).

## COUNT FOUR
[18 U.S.C. § 201 - Bribery]

1. The allegations contained in Paragraphs 1 through 6 of Counts One and Two of this Indictment are realleged as though fully set forth herein.

2. From in or about October 2001, and continuing through in or about January 2002, in the Middle District of Alabama and elsewhere, defendant

## WILLIAM CURTIS CHILDREE

did directly and indirectly, corruptly give, offer, and promise a thing of value to defendant JEFFREY HOWARD STAYTON, a public official, with the intent to influence STAYTON in STAYTON's performance of official acts, that is, CHILDREE made a payment to a third party for STAYTON's benefit in the amount of $61,071.75, in return for STAYTON's favorable treatment for CHILDREE and his company in the award and supervision of government contract DATM05-02-C-0005.

All in violation of Title 18, United States Code, Sections 201(b)(1)(A).

## COUNT FIVE
[18 U.S.C. § 1503 - Obstruction of Justice]

1. The allegations contained in Paragraphs 1 through 6 of Counts One and Two of this Indictment are realleged as though fully set forth herein.

2. Beginning in or around early 2004, a grand jury investigation commenced in the Middle District of Alabama seeking to determine the truth behind allegations that defendant JEFFREY HOWARD STAYTON and others participated in a scheme to deprive the United States government and the Army of their right to STAYTON's honest services in connection with government contract DATM05-02-C-0005.

3. In or around June 2005, in the Middle District of Alabama, defendant JEFFREY HOWARD STAYTON did corruptly influence, obstruct and impede, and endeavor to influence, obstruct and impede, the due administration of justice in a federal grand jury investigation that he knew was pending, that is, the investigation into the handling of government contract DATM05-02-C-0005, by providing false testimony and information in an effort to falsely persuade the grand jury that a $61,071.75 payment that defendant WILLIAM CURTIS CHILDREE made to him in January 2002 was a loan.

All in violation of Title 18, United States Code, Section 1503.

## A TRUE BILL.

_____
**FOREPERSON**

ANDREW LOURIE
ACTING CHIEF, PUBLIC INTEGRITY SECTION

Presented by:

_____
SHAUN M. PALMER
Trial Attorney

_____
MATTHEW C. SOLOMON
Trial Attorney

U.S. Department of Justice
Criminal Division
Public Integrity Section
1400 New York Avenue, NW
Washington, DC 20005
(202) 514-1412