IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| vs. | : | |
| | : | DOCKET NO. 1:06-CR-66-WSD |
| | : | |
| JEFFREY HOWARD STAYTON and | : | |
| | : | |
| WILLIAM CURTIS CHILDREE, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## UNITED STATES' TRIAL MEMORANDUM

COMES NOW the United States of America, by and through undersigned

counsel, and respectfully submits the following Trial Memorandum to prepare the

Court to most efficiently address certain issues the government expects to arise at

trial.

## Opening and Closing Statements

The Court's Order Setting Trial, dated July 26, 2007, establishes a time limit

of fifteen (15) minutes per side for opening statement and thirty (30) minutes per

side for closing argument.  Given the nature of the case, particularly the scope of

the U.S. Military and government contracting concepts the government needs to

introduce to the jury, the government respectfully requests thirty (30) minutes for

its opening statement.  The government also requests a total of sixty (60) minutes

for closing argument.  While it may not use all of the time (and will not, unless

absolutely necessary), knowing the time is available will ensure the government

can prepare and deliver an effective closing argument that covers all of the issues

in the case.

## Coconspirator Hearsay – Fed. R. Evid. 801(d)(2)(E)

The government intends to introduce certain out-of-court statements made

by both of the defendants in this case.  Some of these statements will be offered in

the form of e-mails or other written documents.  Others will come in the form of

testimony from witnesses who heard those statements.  Because each of these

statements was made in furtherance of a joint criminal venture set forth in the

indictment, and involved one or more of the participants in the joint venture, they

are admissible against the defendants under Rule 801(d)(2)(E) of the Federal

Rules of Evidence.[1]

In order to admit coconspirator statements under Rule 801(d)(2)(E), the

---

[1]The government will also proffer independent bases for a number of these statements, independent of the coconspirator statement rule, including, but not limited to, non-hearsay admissions of party opponent under Rule 801(d)(2)(A), statements reflecting adoption or belief in its truth under Rule 801(d)(2)(B), or hearsay exceptions for business records (Rule 803(6)) or then-existing state of mind (Rule 803(3)).

Court need only find by a preponderance of the evidence that a conspiracy existed, that the defendants were participants in the conspiracy, and that the statements were made in furtherance of the conspiracy.  See, e.g., United States v. Beale, 921 F.2d 1412, 1422 (11th Cir. 1999).  In making this determination, the Court may consider all of the evidence, including the coconspirator statements themselves. Bourjaily v. United States, 483 U.S. 171, 175 (1987).

Moreover, coconspirator statements are admissible under Rule 801(d)(2)(E) regardless of whether the defendant is charged with conspiracy in the indictment. See United States v. Magluta, 1418 F.3d 1166, 1179 n.5 (11th Cir. 2005) ("That th[e] conspiracy was not charged in the indictment in this case does not matter."); United States v. Swidan, 888 F.2d 1076, 1080 (6th Cir. 1989) (noting that whether a conspiracy is charged is irrelevant to admissibility of coconspirator statements); United States v. Salisbury, 662 F.2d 738, 740 (11th Cir. 1981) ("Statements of a coconspirator may be introduced into evidence even though the government has not charged [the defendant] with conspiracy as long as the existence of the conspiracy has been properly established."); United States v. Freeman, 619 F.2d 1112, 1123 (5th Cir. 1980) (same); see also Fed. R. Evid. 801(d)(2)(E) advisory committee's note ("While the rule refers to a coconspirator, it is the committee's understanding that the rule is meant to carry forward the universally accepted

doctrine that a joint venturer is considered as a coconspirator for the purposes of this rule even though no conspiracy has been charged."). All that is required is that the evidence establish a joint criminal venture, such as the scheme charged in the indictment in this case. See Salisbury, 662 F.2d at 740; Freeman, 619 F.2d at 1123 ("Coconspirator declarations may be attributed as evidence to other conspirators, once the existence of the conspiracy has been established.").

In this case, the documents, testimony and other evidence offered at trial will establish a joint criminal venture in the form of a scheme between Defendants Stayton and Childree to deprive the U.S. Army and the public of Stayton's honest services, through influencing the award of Contract DATM05-02-C-0005 to Childree's company, supervising the contract and appropriated contract funds, Childree's paying a $61,071.75 bribe to Stayton, and both defendants' concealing of that financial relationship from the U.S. Army and the public.

Whether a statement is "in furtherance" of a joint venture is interpreted broadly. See, e.g., United States v. Turner, 871 F.2d 1574, 1581 (11th Cir. 1989). The statement need not be necessary to the joint venture; it merely must be intended to affect future dealings between the parties. Id. In various cases, the Eleventh Circuit has interpreted Rule 801(d)(2)(E) broadly to include almost all statements between members and prospective members of a joint venture, except

4

mere narrative or idle chatter. See United States v. Santiago, 837 F.2d 1545, 1549

(11th Cir. 1988) ("This court applies a liberal standard in determining whether a

statement is made in furtherance of a conspiracy."); id. (noting that mere

"bragging" may satisfy Rule 801(d)(2)(E) "if such statements are used to obtain

the confidence or allay the suspicion of a coconspirator").  This rule is also applied

broadly to statements made by one of the conspirators in furtherance of the

conspiracy.  See United States v. Caraza, 843 F.2d 432, 436 (11th Cir. 1988)

("The out of court statement need not be necessary to the conspiracy; it must only

further the conspiracy."); United States v. Archbold-Newball, 554 F.2d 665, 676

(11th Cir. 1977) (clarifying that statements may be admissible even where they are

"a small part of a larger conspiracy").

    Each of the statements the government intends to introduce was made in

furtherance of the scheme charged in the indictment, and the statements

collectively span a time frame from approximately October 10, 2001, when

Defendant Stayton was gathering information from Maverick Aviation's

competitors shortly before the company formally received the matter (e.g., GX-

32)[2], to statements made during the investigation of this matter and which sought

---

    [2]The government recognizes that the cites to "GX" numbers will only be
useful once the exhibits have been produced.  While the government has
preliminarily numbered and indexed its exhibits, the documents themselves are

to conceal the defendants' conduct from investigators.  (e.g., GX-55, GX-56).

For ease of analysis, the admissible coconspirator statements can be broken out into a number of categories, each of which furthered the criminal scheme.

*Statements Relating to the Contract Award*

Telephone records will show that Defendant Stayton and Defendant Childree were in frequent contact in October 2001, during the time the government was first seeking a contractor.  The evidence will show that Defendant Stayton took a number of steps during this time to make sure that Defendant Childree's company, Maverick Aviation, was one of the vendors considered for the award.  Defendant Stayton did this notwithstanding that the individuals he charged with conducting a "market survey" of potential vendors intentionally avoided soliciting Maverick due to the company's past performance problems. When provided the results of the market survey, which excluded Maverick, Defendant Stayton removed one company from the "vetted vendor list," Taos Aviation, and replaced that company with Maverick.  This was the first step

---

currently being processed and scanned.  The government hopes to be in a position to produce to the Court and defendants no later than Wednesday morning, November 21, a copy of its exhibit list and exhibits.  If the Court wishes to conduct a more detailed review of the proposed coconspirator documents earlier than Wednesday morning, the government might alternatively be able to compile a collection of those materials at some earlier point.

Defendant Stayton took to ensure that Maverick was "in the game," and fairly can be said to be the beginning of the scheme.  United States v. Massey, 89 F.3d 1433, 1439 (11th Cir. 1996) ("[D]irect evidence of an agreement . . . is unnecessary: proof of such agreement may rest upon inferences drawn from relevant and competent circumstantial evidence. To hold otherwise would allow [defendants] to escape liability . . . with winks and nods, even when the evidence as a whole proves that there has been a meeting of the minds to exchange official action for money." (internal quotation marks and citations omitted)); United States v. Burton, 871 F.2d 1566, 1571 (11th Cir. 1989) ("Secrecy being the essential nature of the conspiracy, 'such an agreement may be proved by circumstantial as well as direct evidence.'" (quoting United States v. Browning, 723 F.2d 1544, 1546 (11th Cir. 1984)).  The following documents are examples of admissible co-conspirator statements during this time period:  GX-12, GX-12A, GX-32, GX-65, GX-66, GX-66A, GX-79.

*Statements Facilitating Payment to Maverick Under the Contract*

Before, during, and shortly after the mission to Russia, Defendant Stayton made statements in the form of telephone conversations, voicemails, and e-mails which caused the release of funds from the escrow account to Maverick Aviation. Defendant Childree also prepared documents relating to his company's

participation in the contract. Each of these statements furthered the scheme by ensuring that Maverick Aviation received the money it desperately needed, particularly given its tight financial condition. Among the documents that reflect co-conspirator statements impacting the payment of funds to Maverick are: GX-20, GX-24A, GX-25. The government will also provide testimony from witnesses Edwin Guthrie and Cheryl Cretin regarding oral statements Defendant Stayton made which caused the release of funds to Defendant Childree's company.

*Statements Regarding the Spare Parts Issue*

One of the central aspects of the government's proof will be that Defendant Stayton certified on December 21, 2001 that the contract was complete under the terms established by the Department of the Army, when it actually was not. This oral certification (later memorialized in writing and backdated), caused the release of the final $1.07 million to Defendant Childree's company under the contract. However, when Defendant Stayton made this certification, the bulk of the spare parts had not been received or inspected in Russia. Over the course of the next six months, Defendants Childree and Stayton exchanged a number of e-mails between themselves and with sources for the spare parts shipments. In these e-mails, the defendants discussed tracking down the necessary parts which, pursuant to the contract, should have been secured many months earlier – and for which

8

Defendant Childree, because of Defendant Stayton's false certification, had already been paid.  By continuing to track down the spare parts after the contract had been certified (and after Defendant Stayton had received the $61,000 payment from Defendant Childree), these e-mail statements furthered the overall scheme. The following are among the documents with coconspirator statements relating to the spare parts issue:  GX-68, GX-76, GX-76A, and GX-77 thru GX-77j.

*Statements Regarding the Award of the T-28 Contract*

As explained below, the government will offer evidence that a number of months after receiving the $61,000 payment from Defendant Childree, Defendant Stayton took steps to facilitate the award of a subsequent, sole-sourced contract for work on a T-28 fixed wing aircraft.  The funds used to pay for this contract were misdirected by Defendant Stayton to Maverick from funds originally allocated for and left over from the Mi-17 contract.  The actions surrounding the award of the T-28 contract are central to the government's honest services wire fraud scheme and constituted additional official acts taken by Defendant Stayton in exchange for the bribe payment.  Statements made by either defendant facilitating the award and payment under the T-28 contract furthered the overall scheme.  Particular documents include:  GX-49, GX-50.  The government will also introduce testimony from witness Connie Carey recounting Defendant Stayton's statements

9

regarding the T-28 issue.

*Statements Concealing the Scheme*

Finally, after this matter came under investigation, the defendants made statements with the intention of concealing their scheme from Army investigators, auditors, and a federal grand jury. Such "concealment" statements can be viewed as furthering the scheme and qualify as coconspirator hearsay under Rule 801(d)(2)(E). See United States v. Posner, 764 F.2d 1535, 1538 (11th Cir. 1985) ("Statements made by a coconspirator to allay suspicions can be 'in furtherance' of a conspiracy and therefore admissible."). These documents include, but are not limited to: GX-55, GX-56, GX-83, and GX-84.

## Testimony Relating to Legal and Ethical Requirements

As one aspect of the honest services fraud scheme charged in Counts One and Two, the government will prove that defendants willfully and with intent to defraud employed a material falsehood, omitted a material fact, or concealed a material fact from the Department of the Army and the general public, specifically the relationship between Defendants Stayton and Childree and the $61,000 bribe payment. See United States v. Walker, 490 F.3d 1282, 1297 (11th Cir. 2007) (noting that the scope of honest services fraud is "extremely broad" and that "once the government establishes a scheme formed with intent to defraud, the honest

services fraud is complete, regardless of how the intent manifests itself in execution" (internal quotation marks omitted)).  The government intends to offer evidence regarding Defendant Stayton's duty to disclose information regarding his financial relationship with Defendant Childree and the importance of such disclosures to Defendant Stayton's supervisors and ethics officer.  This evidence is relevant to the state of mind of Defendant Stayton, the "materiality" requirement, and to combat any defense contention that the failure to disclose did not matter.  The government will not present expert testimony as to the ultimate question of whether the defendants had the requisite criminal intent or, in fact, made a material concealment of fact.  Rather, the testimony will describe:

•    the ethical obligations of individuals in Defendant Stayton's position;

•    required training delivered to individuals in Defendant Stayton's position regarding ethical issues; and

•    the actions that various fact witnesses would have taken regarding the administration of the contract if had they known of the defendants' personal financial relationship, corrupt agreement, and the exchange of personal and financial benefits for official acts.

The government might also elicit what could be characterized as limited lay opinion testimony, consistent with Rule 701 of the Federal Rules of Evidence.  For instance, an observation by Defendant Stayton's ethics counselor or supervisor that Defendant Stayton would have been familiar with the ethical and other rules

governing contractor gifts and disclosure requirements, or that a gift of the

magnitude of that charged in the indictment would have raised red flags and

should have been disclosed, would be opinions or observations "rationally based

on the perception of the witness" and "helpful to a clear understanding of the

witness's testimony or the determination of a fact in issue." Fed. R. Evid. 701.

Therefore, such evidence is relevant and admissible.

The government intends to elicit testimony from David Franke, General

Counsel for ATEC and Defendant Stayton's ethics counselor, regarding the legal

obligations placed on Army officials involved in the contracting process,

including gift rules, conflicts of interest, training, and disclosure requirements.

The government will offer as exhibits the text of various statutes and code

provisions applying to Defendant Stayton's conduct, PowerPoint slides utilized at

training sessions delivered to Defendant Stayton's office by Mr. Franke, and sign-

in sheets reflecting Defendant Stayton's attendance at a number of these sessions.[3]

---

[3]The Court should reject any argument that some of the ethical standards described by Mr. Franke employ a different standard than criminal provisions and are, thus, somehow irrelevant. See, e.g., United States v. Snyder, 668 F.2d 686, 690-91 (2d Cir. 1981) (finding that introduction of civil liability standards of a fiduciary was appropriate as long as a jury instruction clearly indicates the different burden for criminal liability); United States v. Pelullo, 961 F. Supp. 736, 760 (D.N.J. 1997) (noting that civil fiduciary duty was used to rebut defendant's contention that he lacked criminal intent). Testimony regarding civil fiduciary duties is "highly relevant" to the issue of criminal intent. United States v. Christo,

The government does not technically need to prove that Defendant Stayton actually knew his failure to disclose this information violated federal law or ethics guidelines.  See United States v. Paradies, 98 F.3d 1266, 1284-85 (11th Cir. 1996) (holding in an honest services fraud case that the trial court properly refused to instruct the jury "that the defendants knew that their conduct was against the law" because the Government "need only prove that the defendant had the intent to deceive, and ignorance of the law is no defense"); cf. United States v. Dean, 487 F.3d 840, 850 (11th Cir. 2007) ("As a general rule, ignorance of the law or a mistake of law is no defense to criminal prosecution in the United States.") (citing Cheek v. United States, 498 U.S. 192, 199 (1991)).  However, the evidence described above is relevant and admissible in order to resolve any doubts about Defendant Stayton's willfulness and intent to defraud.  In other words, this evidence is highly relevant and probative of Defendant Stayton's state of mind.

This type of evidence is also relevant to Defendant Childree.  Specifically, the government will offer testimony and documents through Connie Carey, an Army contracting officer, that Defendant Childree, by entering into a contract with the Army, certified his familiarity and agreement to comply with certain laws "unique to government contracts," including 31 U.S.C. § 1352 (relating to

---

614 F.2d 486, 492 n. 7 (5th Cir. 1980).

limitations on the use of appropriated funds to influence certain federal contracts); 18 U.S.C. § 431 (relating to officials not to benefit); 41 U.S.C. §§ 51-58 (Anti-Kickback Act of 1986); and 41 U.S.C. § 423 (relating to procurement integrity). This evidence is relevant to Defendant Childree's criminal intent and state of mind.

The government will also proffer the testimony of two of Mr. Stayton's supervisors, Col. John "Mike" Cribbs (retired) and Col. John Rooney, who will each testify regarding the importance of the annual financial disclosures, the problems with gifts or other benefits received from contractors, and what actions they would have taken had they known about the nature of the relationship between defendants. Again, this testimony is relevant evidence with respect to the materiality of the falsehoods and concealed information and Defendant Stayton's state of mind. With this line of questioning, the government will not ask the witnesses to speculate or reach a legal conclusion on an ultimate fact. Instead, the government will simply ascertain the materiality of the defendants' falsehoods and concealment, which is a required element of proof for the honest services wire fraud charges in Counts One and Two of the Indictment. Without this information, it will be impossible for the jury to determine the materiality of the defendants' falsehoods and concealment during the course of their scheme and

thus impede the government' ability to carry its burden of proof with respect to all elements of the crimes charged.

**Evidence Regarding the T-28 Issue**

The Indictment alleges that, in return for the $61,071.75 payment from Defendant Childree, Defendant Stayton provided "favorable treatment for CHILDREE and his company in the award and supervision" of the contract. Indictment at 7 (Count Three, ¶ 2) and 8 (Count Four, ¶ 2). The evidence will show that, as part of the supervision of the contract, including direction of contract funds, Defendant Stayton not only influenced the award and payment under Contract DATM05-02-C-0005 ("the Mi-17 contract"), but also took steps to facilitate payment of an additional approximately $15,000 payment to Maverick for work conducted on a T-28 fixed wing aircraft in 2002. The money allocated to Maverick for this work came directly from funds appropriated by the Department of the Army for the Mi-17 contract and left over from that mission. Defendant Stayton took these steps many months after he had received the more than $61,000 payment from Defendant Childree and during a time when he clearly should not have been acting in an official capacity with respect to Maverick Aviation's work. Documents and testimony related to this T-28 issue are relevant and admissible.

15

The government raises this issue in anticipation of a defense objection that this evidence is outside the scope of the indictment, irrelevant, prejudicial, and/or confusing to the jury.  To the contrary, as set forth above, this evidence is part and parcel of the chain of events at the heart of the case – Defendant Stayton's role in influencing the "award and payment" and "supervision" of the contract funds, and the failure to disclose the financial relationship between the defendants.  The evidence is relevant under Rule 401, as it makes "the existence of any fact that is of consequence to the determination of the action" – whether Defendant Stayton took official action on behalf of Defendant Childree and Maverick Aviation, notwithstanding his undisclosed financial interest – "more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Further, any prejudice argument under Rule 403 should be resolved in favor of the high probative value of the evidence relative to any asserted prejudice.  Put simply, this evidence is part and parcel of the scheme charged in the Indictment.

This evidence should come as no surprise to the defendants.  Materials relating to the T-28 issue were included in discovery and have been in defendants' possession for well over 18 months.[4]  With respect to trial efficiency, this issue is

[4]If defendants had a principled objection to the admissibility of this evidence, it should have been the subject of a motion *in limine*, the deadline for which passed last month.

relatively straight-forward and narrow from a proof standpoint, comprising very few exhibits and which will be addressed by brief testimony from two fact witnesses and a summary witness.  At most, it will lengthen the trial by approximately an hour, will be clearly described in opening statement and by the appropriate witnesses, and therefore should not be confusing to the jury.

**GJ Audio Recordings and Transcripts**

Count Five charges Defendant Stayton with Obstruction of Justice, in violation of 18 U.S.C. § 1503.  The charge focuses on Defendant Stayton's lies during his grand jury testimony, during which he described the more than $61,000 payment made by Defendant Childree on his behalf as a "loan."  The government will adduce evidence at trial that this payment was not, in fact, a loan, but was a bribe payment made for the benefit of Defendant Stayton.  In order to prove the obstruction charge, the government will need to publish some or all of Defendant Stayton's grand jury testimony to the grand jury.  The government has prepared a redacted, digitized copy of Defendant Stayton's actual audio testimony, which it intends to play for the jury at trial (and which it has previously provided to Stayton's counsel).  The government will provide the jury with hard copies of the transcripts prepared by the grand jury court reporter, which they will be able to use to follow along as the audio testimony plays.  See <u>United States v. Reed</u>, 887 F.2d

17

1398, 1406 (11th Cir. 1989) (finding no error where jurors used transcripts to

better understand tape recordings during trial, and noting that "[t]he propriety of

the government's use of transcripts of tape recordings is not restricted to the time

of presenting the tapes to the jury"); United States v. Brown, 872 F.2d 385, 392

(11th Cir. 1989) (noting that the "use of transcripts of taped recordings as an 'aid'

to the jury" is "clearly established" in the Eleventh Circuit); see also United States

v. Nixon, 918 F.2d 895, 902 & n.4 (11th Cir. 1990) (upholding the use of

transcripts during testimony and jury deliberations where the district court

specifically instructed the jury that it was to make determinations of identity based

on the audio recordings in question and not on the text or labels found in the

government-prepared transcripts).

### Admissibility of 1999 Tail Rotor Incident

The government intends to introduce evidence that two years prior to the

scheme alleged in the Indictment, Defendant Childree demanded payment for

helicopter parts which he claimed had been delivered, but for which certain Army

employees had no documentation and believed had not actually been delivered.

Witness Manuel Rendon will testify that when presented with Defendant

Childree's demand for payment, he asked Childree for serial numbers or other

identifying information on the parts.  Defendant Childree was unable to provide

this information.  Defendant Stayton, who was then serving as Government Flight

Representative, ordered the grounding of the fleet of helicopters using the

particular parts, and directed that an audit be conducted of the particular class of

parts, including collection of serial numbers.  After this audit, Defendant Childree

suddenly provided serial numbers for the parts, and Defendant Stayton prepared a

memorandum recommending that Defendant Childree's company be paid for the

parts.

There are multiple bases for the admission of this evidence.  First, as will be

set forth in greater detail below, this evidence is intrinsic to or "inextricably

intertwined" with the evidence of the substantive charges.  Therefore, this

evidence must be admitted so that the government is able to explain fully and

completely the conduct that forms the basis of the honest services wire fraud and

bribery charges at issue in this case.  Second, even though this evidence is intrinsic

to the crimes charged, it also satisfies the requirements for admission as extrinsic

evidence pursuant to Rule 404(b) of the Federal Rules of Evidence ("Fed. R.

Evid."), as this evidence establishes the defendants' motive, intent, plan,

knowledge, and absence of mistake.  Both bases for admissibility are discussed

below.  Further, the defendants were provided written notice of this evidence

almost 20 months ago, on March 24, 2006. Documents related to this evidence were also provided with discovery in this case.[5]

*The "Other Acts" Evidence Proffered by the Government is Intrinsic to or "Inextricably Intertwined" with the Crimes Charged*

The touchstone of admissibility is <u>not</u> whether the evidence is specifically identified in the Indictment. The government is not required to include all evidence it intends to present at trial in the Indictment, so long as it provides the defendants with fair notice of the conduct charged. <u>See</u> Fed. R. Crim. P. 7. Instead, evidence of other crimes, wrongs, or acts is admissible if that evidence tends to prove a course of conduct leading to the offense charged. That is, such evidence is admissible if it is "inextricably intertwined" with the charged conduct or is "necessary to complete the story of the crime [on] trial." <u>United States v. Pesefall</u>, 27 F.3d 511, 517 (11th Cir. 1994); <u>United States v. Wells</u>, 995 F.2d 189, 191-92 (11th Cir. 1993).

Here, the "other acts" evidence the government intends to introduce is inextricably intertwined with the facts of this case and is necessary to complete the picture of the crimes charged. The evidence provides vital background to explain

---

[5]Again, had the defense objected to this evidence, they could have (and should have) moved *in limine* to exclude this evidence consistent with the Court's now-long-passed motions deadline.

20

why Maverick was intentionally excluded from the market survey, and why

Defendant Stayton's insertion of Maverick into the "vetted vendor list" was

significant.  Witnesses including Mr. Rendon will testify that this 1999 tail rotor

incident was one of the main reasons he and his staff did not solicit Maverick for

the market survey and were surprised when the company was ultimately selected.

Thus, evidence of these events will set the stage for and complete the story of how

the defendants carried out their scheme to defraud and commit bribery.  Admission

of this "other acts" evidence is consistent with Eleventh Circuit law, as this

evidence will help elucidate, contextualize, and complete the government's

evidence of the charged honest services wire fraud and bribery scheme.  United

States v Lehder-Rivas, 955 F.2d 1510, 1516 (11th Cir. 1992) (evidence of

preconspiracy drug offenses pertained to the "chain of events forming the context,

motive and set-up of the crime" (internal quotations omitted)); United States v.

Thomas, 242 F.3d 1028, 1032-33 (11th Cir. 2001); United States v. Wright, 392

F.3d 1269, 1276 (11th Cir. 2004) (holding that evidence of defendant's prior

actions "gives the jury the body of the story, not just the ending.")[6]  Therefore, this

evidence should be admitted without reference to Rule 404(b).

*The "Other Acts" Evidence is Admissible Under Fed. R. Evid. 404(b) to Prove Defendants' Intent, Plan, Knowledge, Etc.*

Even if the Court concludes that the other acts evidence is extrinsic to the

crimes charged in the Indictment, then this evidence is admissible under Fed. R.

Evid. 404(b), which provides for the admission of other crimes, wrongs, or acts to

show motive, intent, absence of mistake, plan, and knowledge.  Rule 404(b)

provides, in pertinent part, as follows:

> Evidence of other crimes, wrongs, or acts is not admissible
> to prove the character of a person in order to show action
> in conformity therewith.  It may, however, be admissible
> for other purposes, such as proof of motive, opportunity,
> intent, preparation, plan, knowledge, identity, or absence
> of mistake or accident . . . .

It is well established that the grounds for admission set forth in the rule -- intent,

preparation, plan, knowledge, absence of mistake or accident -- are not an

exhaustive list of theories of admissibility.  Indeed, the circumstances under which

---

[6]See also United States v. Kennedy, 32 F.3d 876, 886 (4th Cir. 1994) (quoting United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989) (alteration in original) (affirming admission of evidence of criminal conduct involving uncharged individuals which took place a year before the charged conspiracy period, without recourse to Rule 404(b)); United States v. Masters, 622 F.2d 83, 87 (4th Cir. 1980) (evidence of uncharged criminal conduct admissible if it "served to complete the story of the crime on trial").

evidence may be admitted under Rule 404(b) are nearly infinite.  See United States v. Cohen, 880 F.2d 770, 776 (11th Cir. 1989) ("The list provided by the rule is not exhaustive and 'the range of relevancy outside the ban is almost infinite.'" (quoting McCormick, Evidence § 190 (Cleary ed. 1972))).  Masters, 622 F.2d at 86.

The Supreme Court has instructed that courts should treat Rule 404(b) as a rule of inclusion, not exclusion.  See Huddleston v. United States, 485 U.S. 681, 687-89 (1988).  Therefore, evidence of other crimes, wrongs, or acts that are extrinsic to the crimes charged is admissible under Rule 404(b) except where such evidence is probative only of the criminal predisposition of the accused.  Id.

The Eleventh Circuit standard permits admission of 404(b) evidence where the government can demonstrate: (1) a proper purpose for introducing the evidence; (2) that the prior act occurred and that the defendant was the actor; and (3) that the probative value of introducing the evidence outweighs any prejudicial effect the evidence might have.  See United States v Cancelliere, 69 F.3d 1116, 1124 (11th Cir. 1995); United States v. Mills, 138 F.3d 928, 935 (11th Cir. 1998).

In this case, evidence is necessary to prove the defendants' relationship and their intent with respect to the honest services and bribery charges, as well as the scope of the defendants' scheme and acts of concealment.  Specifically, it

demonstrates that Defendant Stayton's intervention on behalf of his friend, Defendant Childree, to make sure Maverick Aviation got paid in spite of questionable performance was not a mistake, that Defendant Stayton had the criminal intent required for the charged crimes, and that he acted consistent with a plan to use his position to benefit his longtime friend.  See e.g., United States v. Pessefall. 27 F.3d 511, 516-17 (11th Cir. 1994) (government allowed to introduce evidence that, eight years prior to charged offense, the defendant law enforcement officer had accepted money to protect a smuggling operation); United States v. Matthews, 431 F.3d 1296, 1310-12 (11th Cir. 2005).  This evidence, presented by way of witness testimony and documentary evidence, is both reliable and substantially more probative of a relevant issue than any potential for unfair prejudice.  Thus, on either basis, the government's "other acts" evidence is admissible at trial.

## Custodians and Authenticity Stipulations

The government will offer e-mails and other documents from a number of sources, including various units of the U.S. Army, internet service providers, financial institutions, and other government contractors who competed against Maverick Aviation.  The government intends to offer many of the exhibits in evidence under the business records exception to the hearsay rule, Fed. R. Evid.

24

803(6), and as self-authenticating documents as defined by Fed. R. Evid. 902(11).

The government intends to provide the defense with copies of its custodian

certifications and an exhibit list as soon as possible, though no later than

Wednesday morning, November 21.   As the advisory committee notes clearly

state: "[t]he notice requirement for Rule 902(11) and (12) is intended to give the

opponent of the evidence a full opportunity to test the adequacy of the foundation

set forth in the declaration."  Upon receipt, the defendant will have until the

following Monday to provide the government with notice of any objections to

authenticity and admissibility.   However, the authenticity and business record

proffers will needlessly waste trial time and could be obviated through the use of

pre-review by defense counsel, agreements or stipulations.[7]  Any exhibit lacking a

formal objection at that time should be deemed both authentic and a record of

regularly conducted business activity (where identified by the government).  The

government will be prepared to negotiate stipulations or provide necessary

testimony to establish the requisite authenticity and business record foundation for

any document under objection.  This proposed procedure will dramatically tighten

---

[7]The government expects its exhibit list to be largely complete at this time.
If in the days leading up to trial and undergoing final witness preparation, the
government identifies additional exhibits, it will provide copies to the defense at
that time.

the trial and make most efficient use of jury time.

## Admission of Business Records

The government intends to move for the admission of numerous business records during its case-in-chief.  Many of these documents are either bank records or records related to the administration of and payment under the Contract.  Many of the documents were produced during the grand jury phase of this investigation by records custodians, many of whom have executed and produced a certification establishing that each record conforms to the elements of the hearsay exception of Federal Rule of Evidence 803(6), namely that each record:

(a)  was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

(b)  was kept in the course of the regularly conducted activity; and

(c)  was made by the regularly conducted activity as a regular practice.

Each of these certifications was signed under penalty of perjury.  Under Rule 902(11), business records accompanied by such certifications are self-authenticating documents and may be admitted at trial, subject only to the rule's notice requirement.  See Fed. R. Evid. 902(11).  While no live witness is necessary for introduction of such documents, In re Japanese Elec. Prod. Antitrust Litig., 723

F.2d 238, 288 (3d Cir. 1983), the government proposes to call a live witness for the sole purpose of presenting the material to the jury (discussed below).

With the filing of this memorandum, the government gives notice to defendants of its intent to move at trial for the admission of these business records pursuant to Fed. R. Evid. 803(6) as self-authenticating documents as defined by Fed. R. Evid. 902(11).  The government will also make these certificates available to the defendants upon their request for inspection.  This written disclosure complies with the notice requirement contained in Rule 902(11). See United States v. Warren, No. 7:04-CR-00021, 2005 WL 1164195, at *5 (W.D. Va. May 17, 2005) ("[T]he Government notified the defendant of its intention to offer evidence in accordance with this rule in its . . . Trial Memorandum, satisfying the notice requirements of Rule 902(11) . . . ."); see also Fed. R. Evid. 902(11) advisory committee's note ("The notice requirement in Rules 902(11) and 902(12) is intended to give the opponent of the evidence a full opportunity to test the adequacy of the foundation set forth in the declaration.").

Moreover, admission of these records based on these certifications will substantially reduce the length of trial by avoiding the need for testimony from numerous custodians of records.  The government intends to call witnesses who have reviewed and analyzed these records to assist the jury in understanding their

significance.  All of the business records the government will seek to introduce were provided to the defendants during discovery, well in advance of trial.

**Procedure for Presentation of Certain Evidence**

The government plans to call Army CID Special Agent Jennifer Bryan as a summary witness relatively late in its case-in-chief.  Her substantive testimony will focus on, *inter alia*, the movement of contract funds, relevant aspects of the investigation, and to admit certain summary charts pursuant to Rule 1006 of the Federal Rules of Evidence.

As discussed above, the government hopes to admit self-authenticating documents and business records at or near the beginning of trial without calling a witness, consistent with Rules 104(a), 803(6) and 902(11).  However, depending upon how the Court allows the government to present this evidence to the jury, the government may seek to call Special Agent Bryan earlier in the trial, as well, for the limited purpose of publishing these documents to the jury.  The government recognizes that it is unconventional to call a particular witness on two separate occasions.  However, there are good reasons for this proposed course.  First, the purpose of Agent Bryan's initial testimony would be purely administrative. Second, the documents lay an important foundation for the jury's appreciation of subsequent witnesses, and it will substantially aide their understanding of the

evidence (and eliminate confusion) to present these documents earlier in the trial.

Third, it will save the government resources it would have to otherwise incur to fly

a second agent down to Montgomery for the express purpose of playing this

ministerial role.

**Summary Witness Testimony**

    As this Court is no doubt aware, summary witness testimony is legally

permissible and widely accepted. Cf. United States v. Mills, 138 F.3d 928, 939-40

(11th Cir. 1998) (holding that there was no reversible error where the district court

allowed summary witness testimony, without cross-examination, as to certain

business and financial records); United States v. Evans, 572 F.2d 455, 491-92 (5th

Cir. 1978) (holding that admission of summary witness testimony was permissible

where all of the summarized evidence was before the jury, the district court

properly instructed the jury that the charts and summaries were not evidence, and

the testimony comported with Fed. R. Evid. 1006).  "The testimony of a summary

witness may be received so long as [the witness] bases [the] summary on evidence

received in the case and is available for cross-examination."  United States v.

King, 616 F.2d 1034, 1040 (8th Cir. 1980) (citation omitted).  Moreover, a

summary witness "can help the jury organize and evaluate" such evidence, United

States v. Lemire, 720 F.2d 1327, 1348 (D.C. Cir. 1983), particularly when a case, such as this one, involves voluminous factual evidence.

Because a summary witness's testimony is based on evidence admitted at trial, his or her presence in the courtroom throughout the trial is permitted even when other witnesses are sequestered pursuant to Fed. R. Evid. 615. The government therefore requests that Special Agent Bryan be permitted to remain in the courtroom throughout the trial. Special Agent Bryan is expected to summarize the evidence and discuss exhibits on topics including the Contract award and subsequent modification, the payments of money Defendant Stayton caused to be made to Maverick Aviation, the electronic transfer of the more than $61,000 bribe payment from Defendant Childree for the benefit of Defendant Stayton, and other evidence. This summary testimony will assist the jury in understanding the mechanics of the payments of money and use of interstate wires, among other things.

## Provision of Indictment and Jury Instructions During Deliberations

The government requests that the jury receive a copy of the indictment and jury instructions during its deliberations. This will enable the jury to understand the charges and ensure that the jury follows the Court's instructions. This Court has discretion to provide the jury a copy of the charging instrument with an

instruction that it is not evidence.  See United States v. Haynes, 573 F.2d 236,

241-42 (5 th Cir. 1978) (affirming limiting instruction: "An indictment is but a

formal method of accusing a defendant of a crime.  It is not evidence of any kind

against the accused and does not create any presumption or permit any inference

of guilt.").  And although submission of the jury instructions is also within a

court's discretion, it may be appropriate for the Court to make a written copy of

instructions available to the parties and the jury where the trial is lengthy,

complicated, and involves multiple counts.  See, e.g., United States v. Van Dyke,

14 F.3d 415, 423 (8th Cir. 1994) (holding that district court abused its discretion

in failing to submit instructions to jury during deliberations).  In one case, the

Eleventh Circuit considered whether a tape recording of the jury instructions

should have been submitted to the jury.  See United States v. Watson, 669 F.2d

1374, 1385-87 (11th Cir. 1982).  The court of appeals observed that although a

couple of prior Fifth Circuit cases had disapproved of the practice, "under

appropriate circumstances, the use of a taped charge or a written charge could well aid juror comprehension, as well as expedite the proceedings." Id. at 1386.

Respectfully submitted, this 18th day of November, 2007.

William M. Welch II
Chief
Public Integrity Section

BY:    s/ Matthew L. Stennes
       Shaun M. Palmer
       Matthew L. Stennes
       Trial Attorneys
       Criminal Division, Public Integrity Section
       U.S. Department of Justice
       10th Street & Constitution Avenue, NW
       Washington, DC 20530
       Phone: (202) 514-1412
       Fax: (202) 514-3003
       Email: shaun.palmer@usdoj.gov
              matthew.stennes@usdoj.gov

Mariclaire Rourke
Trial Attorney
U.S. Department of Justice
National Security Division
Counterespionage Section
10th St. & Constitution Ave., NW
Washington, DC 20530
Phone: (202) 514-1187
Fax: (202) 514-2836
mariclaire.rourke@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify on this 18th day of November 2007, that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Stephen R. Glassroth, Esq.
William A. Bootle U.S. Courthouse
475 Mulberry Street
P.O. Box 996
Macon, GA 31202-0996

Joseph P. Van Heest, Esq.
Law Office of Joseph P. Van Heest, LLC
402 South Decatur Street
Montgomery, AL  36104
(334) 263-3551

RESPECTFULLY SUBMITTED,

William M. Welch II                          Mariclaire Rourke

Chief                                        Trial Attorney
Public Integrity Section                     U.S. Department of Justice
                                             National Security Division
                                             Counterespionage Section
BY:   s/Shaun M. Palmer                      10th St. & Constitution Ave., NW
      Shaun M. Palmer                        Washington, DC 20530
      Trial Attorney                         Phone: (202) 514-1187
      Criminal Division                      Fax: (202) 514-2836
      Public Integrity Section               Email: mariclaire.rourke@usdoj.gov
      10th Street & Constitution Avenue, NW
      Washington, DC 20530
      Phone: (202) 514-1412
      Fax: (202) 514-3003
      Email: shaun.palmer@usdoj.gov